*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL DWAYNE CRAWFORD | Criminal Action No. 03-105 |
| Petitioner, | |
| vs. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**WOLFSON, United States District Judge:**

Presently before the Court is Petitioner Carl Crawford's ("Petitioner") motion to vacate, set aside or correct his 240 month sentence pursuant to 28 U.S.C. § 2255. Petitioner asserts: 1) that the United States committed prosecutorial misconduct by deliberately withholding relevant evidence favorable to the Petitioner; 2) the jury for Petitioner's trial was unconstitutionally empaneled; and 3) ineffective assistance of counsel. Respondent United States of America ("Respondent") opposes Petitioner's motion. Petitioner also moves to modify his sentence pursuant to 18 U.S.C. § 3582(C)(2). For the following reasons, the Court denies both of Petitioner's motions, and thus, dismisses his petition.

**I.  Background and Procedural History**

The procedural history of this case is lengthy and protracted, but "[b]ecause [I] write for the parties who are familiar with the factual context and procedural history of this case, [I] recite only the facts that are relevant to [my] analysis." Bentley v. Atlantic County, NJ, No. 09-3069, 2010 WL 2113453, at *1 (3d Cir. May 27, 2010). On or about January 16, 2003,

1

Petitioner was arrested as a suspect in an armed bank robbery. The next day, pursuant to a search warrant, Petitioner's residence was searched for evidence relating to the robbery. The warrant listed the following, among other things, to be seized: clothing that may have been used during the bank robbery, any United States currency, documents relating to the victim bank, bank wrappers, and any firearms, ammunition, or proof of purchase of either.

Just prior to the search, agents observed an unknown male entering the Petitioner's apartment building using a key. The unknown individual came out of the building only a few minutes later. As part of the investigation, the agents interviewed this male, later identified as Robert Wright, a convicted drug dealer. The agents asked him the purpose of his visit, and Wright replied that he was visiting a male resident of the apartment building by the name of Michael Johnson.[1] The agents took his keys and tried them on the locks to the two apartments in the building, including Petitioner's apartment, but the keys did not open either apartment. With no reason to detain the individual, the agents allowed him to leave the premises.[2] Subsequently, during the course of the search of Petitioner's apartment, agents recovered the following evidence not specifically listed in the search warrant: 68.1 grams of cocaine base ("crack") hidden on top of the kitchen cabinets, and drug paraphernalia inside the bedroom closet. Agents also recovered a .380 caliber semiautomatic pistol underneath the mattress, and .380 caliber ammunition from on top of an armoire in the living room, pursuant to the search

---

[1] However, at trial, the building manager testified that no tenant by the name of Michael Johnson resides at the apartment. In fact, there is no evidence in the record that such person even exists.

[2] This encounter will be referred to as the "Wright encounter" for the remainder of this Opinion.

2

warrant.

The trial was bifurcated due to the potential for prejudice, and Petitioner was first tried on the bank robbery charges, for which he was acquitted. Petitioner was then tried in a second trial for felony possession of a firearm, and possession with intent to distribute cocaine base. Petitioner was convicted in a jury trial, and sentenced to 63 months for the firearm conviction, and 240 months for the drug conviction. An appeal was filed and the Third Circuit affirmed the Judgment of Conviction on November 23, 2005, but remanded for re-sentencing. Petitioner subsequently appealed his amended sentence, which sentence was affirmed by the Third Circuit on May 12, 2008.

Petitioner then filed the instant motion on January 20, 2009, challenging only his drug conviction.[3] Petitioner moved to amend his motion on March 4, 2009, which the Court denied.[4] The Court also sent Petitioner notice pursuant to U.S. v. Miller, 197 F.3d 644 (3d Cir. 1999), stating the Court's intention to rule upon Petitioner's motion as a § 2255 motion. Thereafter, on August 21, 2009, Petitioner filed a motion to modify sentence under 18 U.S.C. § 3582(C)(2), alleging that his sentence should be reduced in light of Amendment 706 of the Sentencing Guidelines. Finally, Petitioner filed a second motion to amend the §2255 motion on March 22, 2010, alleging additional grounds for *habeas* relief. Respondent has only

---

[3] Petitioner concedes that the search warrant, as it was issued pursuant to an armed robbery, allowed agents to search for the presence of firearms. As such, he does not challenge the use of the firearm as evidence.

[4] Petitioner's first amendment was primarily an attempt to seek certain court documents, in *forma pauperis*, that Petitioner intended to use to challenge his conviction, specifically transcript of his voir dire proceeding during the second trial, copy of a report of drug property seized, and transcript of a certain proceeding on March 4, 2004.

3

responded to Petitioner's original § 2255 motion, and has filed no papers in connection with Petitioner's motion to modify sentence or his second motion to amend.

## II. Petitioner's Motion to Amend

As a preliminary matter, the Court first addresses the timeliness of Petitioner's second attempt to amend his § 2255 motion, filed on March 22, 2010. To begin, the Court notes that Petitioner is entitled to amend his § 2255 motion under the normal rules of civil procedure. 28 U.S.C. § 2243 (2009) ("[Application for a writ of habeas corpus] may be amended or supplemented as provided in the rules of procedure applicable to civil action"); see also Mayle v. Felix, 545 U.S. 644, 649 (2005).

However, federal statutes require that, unless certain enumerated impediments exist that are not applicable here, a petition for *habeas* relief shall be filed within one year from the date on which the judgment of conviction became final. 28 U.S.C. § 2255(f)(1). Since Petitioner's conviction became final on May 12, 2008, Petitioner had until May 12, 2009 to file a timely § 2255 motion. Petitioner's original motion was filed on January 20, 2009, well within the statutory limitation. However, Petitioner's second motion to amend, filed on March 22, 2010, falls outside of the statutory limitation. Accordingly, unless Petitioner's amendments "relate back" to the date of the original petition under Fed. R. Civ. P. 15(c), Petitioner is time-barred to assert any new grounds for *habeas* relief outside of the one-year period. See U.S. v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999).

Rule 15(c)(1) of the Federal Rules of Civil Procedure states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted

4

to be set out - in the original pleading." In the context of a *habeas* petition, however, claims do not arise out of the same conduct, transaction, or occurrence simply because the claims are related to the same trial, conviction, or sentence as a timely filed claim. Mayle, 545 U.S. at 662. Such interpretation, the Supreme Court held, would make the statutory one-year limitation on claims meaningless because "virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." Id. at 657. Instead, the amendments must "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." Id.

Petitioner's original motion included three claims: 1) Respondent withheld information regarding the Wright encounter; 2) the jury for Petitioner's trial was unconstitutionally empaneled; and 3) counsel was ineffective based on the failure to conduct adequate pre-trial investigation, and the failure to advise him of his right to testify. Petitioner's motion to amend raises three grounds for *habeas* relief: 1) Respondent withheld a letter from Robert Wright stating his intention not to testify ("Amendment One"); 2) Petitioner's counsel failed to re-file a motion to suppress evidence filed by previous counsel ("Amendment Two"); and 3) counsel failed to notify Petitioner of his right to testify ("Amendment Three"). The three grounds for *habeas* relief identified in Petitioner's motion to amend, however, are similar to those raised in the original petition. In the initial *habeas* petition, Petitioner alleged that Respondent withheld information. Amendment One simply provides greater specificity with regard to that allegation by identifying a particular piece of evidence that was withheld. Similarly, in the initial *habeas*

petition, Petitioner alleged that counsel was ineffective based upon the failure to conduct pre-trial investigations. Amendment Two specifically alleges that counsel failed to investigate a particular pre-trial motion filed by previous counsel. Finally, Petitioner identified counsel's failure to notify him of his right to testify in the original *habeas* petition. Petitioner's arguments in connection with that allegation in his motion to amend are merely supplemental. In essence, Petitioner's amendments merely raise, in greater specificity, the same claims in his original petition. Amendments that restate original claims with greater particularity or amplify circumstances surrounding pertinent conduct, transaction or occurrence in the preceding pleading relate back to date of the original pleading. Bensel v. Allied Pilots Assoc., 387 F.3d 298, 310 (3d Cir. 2004).

### III. Alleged Grounds for *Habeas* Relief

#### A. Prosecutorial Misconduct

Petitioner alleges that Respondent committed prosecutorial misconduct by deliberately withholding relevant evidence favorable to Petitioner. Specifically, Petitioner claims that (1) Respondent withheld a letter sent by Robert Wright to Respondent, asserting his right not to testify; and (2) Respondent misled the jury when it deliberately chose not to disclose to the jury the Wright encounter, and also prevented Petitioner from doing so. The Court disagrees.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963); see also U.S. v. Reyeros, 537 F.3d 270, 281 (3d Cir. 2008). To establish a Brady violation, a defendant must show that 1) the evidence at issue was

6

favorable to the defendant; 2) it was material; and 3) it was suppressed by the prosecution. Reyeros, 537 F.3d at 281. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting U.S. v. Bagley, 473 U.S. 667, 682 (1985)).

Applying the facts of this case, the Court finds no Brady violations. Addressing first the allegation that Respondent deliberately hid the Wright encounter from the jury, the Court does not find that Respondent suppressed any evidence in any way. By Petitioner's own admission, he and his attorney were aware of the encounter, and tried to put the agents on the stand to testify about the encounter under the theory that Robert Wright planted the drugs in Petitioner's apartment. With Robert Wright unavailable to testify, however, the trial court ruled that whatever testimony the agents may offer would be considered hearsay and thus was inadmissible. This simply does not amount to suppression of evidence by Respondent.

Additionally, the June 24, 2003 letter from Robert Wright, which Petitioner identifies as exculpatory, cannot support Petitioner's allegations of a Brady violation. The letter sent by Wright's counsel simply informed the government, in response to a subpoena for testimony before the grand jury investigating Petitioner and others, that Wright would be asserting his Fifth Amendment right to remain silent to any and all questions before the grand jury. Petitioner asserts that Respondent did not produce this letter until February 6, 2007, after his trial and conviction. However, the letter is clearly not favorable to Petitioner's defense such that Respondent's failure to timely provide it to Petitioner amounts to a Brady violation. Even assuming that Robert Wright's refusal to testify was an implied admission of guilt, Petitioner's attempt to infer that Wright's refusal to testify amounted to an admission that he planted drugs

at Petitioner's apartment is overreaching at best. Moreover, as Respondent points out, while Petitioner suggests the letter could have been used to impeach Wright, Wright did not testify at trial. Wright's intent not to testify before the grand jury does not in any way raise a reasonable probability that, had the letter been disclosed, the result of Petitioner's trial would have been different. As such, the Court finds that Respondent committed no prosecutorial misconduct.

### B. Improper Jury Selection

Petitioner next alleges that Respondent improperly excluded African Americans from the all-Caucasian jury in violation of his Sixth Amendment right to an impartial jury. Under the Sixth Amendment, the Supreme Court held that a jury must be drawn from a fair cross section of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975). This requirement of fair cross section, however, does not guarantee that juries be of any particular composition. Id. at 538. In fact, defendants are not entitled to a jury of any particular composition. Id.; see also U.S. v. Smith, 247 Fed.Appx. 321, 323 (3d Cir. 2007). Rather, it is "the jury wheels, pools of names, panels, or venires from which juries are drawn [that] must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Taylor, 419 U.S. at 538.

To establish a prima facie violation of the fair cross section requirement, defendant must establish that 1) the group alleged to be excluded is a "distinctive" group in the community; 2) the representation of this group in **venires** from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. Smith, 247 Fed.Appx. at 323 (emphasis added); U.S. v. Weaver, 267 F.3d 231, 237 (3d. Cir.

8

2001); see Duren v. Missouri, 439 U.S. 357 (1979).

In this case, Petitioner fails to establish a prima facie violation. While it is certainly true that African Americans are a distinctive group in the community, see U.S. v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001), Petitioner offers no evidence, and in fact makes no allegations, that the venire from which his all-Caucasian jury was selected from was an unfair representation of the community, much less that any such unfair representation is caused by a systematic exclusion of African Americans in the jury-selection process. Petitioner's general citation to the "Center on Urban & Metropolitan Policy: June 2001 * The Brookings Institution* Census 2000 Series" is unsupportive of his allegations as the purported statistics contained therein have no relation to the venires from which Petitioner's jury was selected. The only evidence Petitioner relies on is that the jury itself was all Caucasian. As the foregoing cases make clear, Petitioner is not entitled to a jury of any particular composition. Without more, the Court must find Petitioner's allegation of unfair jury selection without merit.

To the extent that Petitioner's claim may be construed as a Batson challenge, Petitioner is barred from raising a Batson claim under the procedural default rule. "[A] timely objection to the use of peremptory strikes is not merely a matter of state procedural law; instead, a timely objection is required to preserve a claimed Batson violation for appeal and failing to do so will result in forfeiture of the claim." Lewis v. Horn, 581 F.3d 92, 102 (3d Cir. 2009). Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. U.S., 538 U.S. 500, 504 (2003). Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural

default, and (2) "actual prejudice" resulting from the errors of which he complains. U.S. v. Frady, 456 U.S. 152, 167 (1982); U.S. v. Pelullo, 399 F.3d 197, 220-21 (3d. Cir. 2005). Procedural default rules apply in equal force whether the habeas petition challenges a state conviction under § 2254 or a federal conviction under § 2255. Reed v. Farley, 512 U.S. 339, 354-55 (1994).

While Petitioner alleges that he questioned why Respondent used its peremptory strikes on African American members, this in itself is not sufficient to preserve his Batson claim.[5]

---

[5]Petitioner's alleged inquiries fall far short of being proper objections. First, the Court notes that at the time he made the purported objections, he was represented by counsel who did not raise any Batson objection at trial. More importantly, however, Petitioner fails to identify specifics as to these purported inquiries. Presumably, Petitioner is referring to comments made by him during an earlier jury selection process. Petitioner's conduct during the jury selection process was so disruptive that it ultimately led to his removal from the courtroom to a holding cell adjacent to the courtroom for the remainder of the trial. As Respondent points out, the following colloquy occurred between the Court and Petitioner during the jury selection process:

> THE COURT: Mr. Crawford, we are going to try to pick a jury this morning. Because of your disruptions on Monday, I let that jury go. I released them and excused them. So we're going to try again this morning to pick a jury, but - and you have a right to be present, but in order to be able to exercise that right, in view of you [sic] past behavior, I need an assurance from you that you will not speak during this trial. Can I have that assurance from you, Mr. Crawford?
>
> THE DEFENDANT: No ma'am . . . .
>
> * * *
>
> THE COURT: Mr. Crawford, let me tell you something else, sir. I know that you were back there and you were able to hear the discussion I just had with counsel. I want you to know that your conduct throughout the earlier trial on Monday, and really almost every time you've been here, has been disruptive, disrespectful. It has disrupted and obstructed the judicial process. I have not at this point held you in contempt. Although I could have held you in contempt, to be frank with you, sir, many, many times, but I tried not to. However, I must tell you that if you disobey an order of this

10

"[O]ne of the primary reasons for requiring a timely objection to the exercise of peremptory strikes is to alert the trial judge to the purported misconduct and to allow the trial judge to remedy the discrimination." Lewis, 581 F.3d at 102. "[A] single remark, uttered by [defendant] himself, and not his counsel, provide[s] insufficient notice to the trial judge of a claim that the prosecution was striking venire members in a racially discriminatory manner." Id. In this case, despite Petitioner's questions, the record shows that counsel, at the end of the voir dire proceeding, stated that he was satisfied with the jury selection process. At no point was the trial judge sufficiently alerted to a timely objection under Batson. As such, Petitioner did not preserve his Batson claim. Insofar as Petitioner alleges no cause or reason why he failed to raise a Batson challenge during voir dire, he is precluded from making a Batson challenge in his *habeas* petition.[6]

---

> court again . . . I will consider holding you in contempt . . . . So I think you've crossed a line now where you're really exposing yourself to criminal time, Mr. Crawford. So in any event, I wanted to be sure I advised you of that.
>
> THE DEFENDANT: Yes, but your Honor, I'm asking why am I here??
>
> THE COURT: Would you please remove Mr. Crawford?
>
> THE DEFENDANT: Why am I here?

March 10, 2004 Transcript, T14:3 - T15:20. While it is not clear the specific objections to which Petitioner is referring, what is clear is that it would be difficult, if not impossible, for the trial judge to have recognized those alleged inquiries as proper Batson challenges in light of Petitioner's generally disruptive behavior.

[6]Petitioner could have raised an ineffective assistance of counsel claim contending that counsel failed to make a timely Batson objection as a "cause" for not preserving the claim. However, even though Petitioner alleges numerous grounds for ineffective assistance of counsel in his petition, failure to make a Batson challenge was not among them.

11

## C. Ineffective Assistance of Counsel

Petitioner also alleges that he was denied effective assistance of counsel, in violation of his Sixth Amendment rights. In particular, Petitioner claims that his court-appointed counsel failed to 1) conduct adequate pre-trial investigation, which resulted in the failure to present exculpatory witnesses during trial; 2) refile a motion to exclude evidence seized from his apartment that was filed by a previous counsel; and 3) failed to discover an "incomplete" motion to sever that subjected him to double jeopardy. The Court is not persuaded by Petitioner's arguments.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). In order to succeed on a claim of ineffective counsel, Petitioner must prove two elements pursuant to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Petitioner must show that counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness;" in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687-688. Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The determination of counsel's ineffectiveness is highly deferential to counsel's professional judgments. See Jones v. Barnes, 463 U.S. 745, 754 (1983). "For Judges to

12

second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies" counsel's ability to support his client. Id. When analyzing counsel's performance, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Ineffectiveness can be shown "[w]here the deficiencies in counsel's performance are severe and cannot be characterized as the product of strategic judgment." U.S. v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

All of Petitioner's arguments fail the Strickland test. First, with regard to Petitioner's contention that counsel failed to conduct adequate pre-trial investigations, the record does not support Petitioner's claim. Without an outright admission by Wright, it is not clear to the Court what other evidence counsel could have uncovered through a thorough investigation that would raise an reasonable inference that Wright did indeed plant drugs at Petitioner's apartment. Petitioner merely alleges, in a conclusory manner, that adequate pre-trial investigation would have revealed exculpatory evidence, but offers no facts supporting his claim. Petitioner points to counsel's failure to present the testimony of the agents at the Wright encounter, as well as their reports of the incident, as "proof" that he failed to investigate, but there is no showing how the agents' testimony and reports would be exculpatory. Nothing in the record indicates that the agents had any idea what Robert Wright was doing in that apartment building that day, much less any knowledge that he might have planted drugs in Petitioner's apartment; indeed, the fact that Robert Wright's keys could not open the door to

13

Petitioner's apartment would tend to suggest the opposite. Petitioner also points to counsel's failure to investigate Michael Johnson as a potential exculpatory witness, whom Robert Wright claimed he was visiting. However, Petitioner offers no evidence that such a person exists, or that Michael Johnson, if located and agreed to testify, would offer exculpatory testimony for Petitioner. In fact, nothing in the record indicates that Michael Johnson is a real person, and not a fictitious character invented by Robert Wright to deflect agents' questions.

Furthermore, the record shows, and Petitioner admits, that counsel tried to present evidence of the Wright encounter to the jury. Counsel sought to submit evidence in the form of the agents' testimony as well as their reports of the encounter, as "proof" that Robert Wright may have planted the drug in Petitioner's apartment. However, as stated previously, the trial court ruled that without Robert Wright's testimony, defense counsel's proffer simply amounted to hearsay. Therefore, it was not a failure to investigate that prevented counsel from discovering and calling exculpatory witnesses. Based on the trial court's ruling, counsel cannot be expected to present witnesses whose testimony is inadmissible; in fact, not only can he not be expected to do so, if he had done so, he could be held in contempt of court, and the jury would be instructed to disregard such evidence. Counsel's "failure" to present these "exculpatory" witnesses was not simply sound trial strategy; it was mandated by the law.

Second, counsel's purported failure to refile a motion to suppress evidence seized at Petitioner's apartment cannot be held to be unreasonable. While the search warrant did not expressly specify the seizure of drugs, under the plain-view doctrine,[7] Respondent's agents

---

[7] Under the plain-view doctrine, an individual's Fourth Amendment rights are not violated if, pursuant to a valid warrant, an officer was 1) entitled to arrive at the place from which the evidence could be plainly viewed; 2) the incriminating character of the seized evidence was

14

were entitled to seize what was immediately apparent to them as incriminating evidence during the course of their authorized search. In this case, no reasonable argument can be made that the incriminating nature of the drugs would not be immediately apparent to an average person, much less a trained government agent. Furthermore, under the search warrant, the agents had lawful vantage point and lawful access to the locations where the drugs were discovered: the drugs were found on top of the kitchen cabinet, where Petitioner could have hidden practically anything of appropriate size, such as stolen currency from the bank robbery, and the drug paraphernalia inside the bedroom closet would have been discovered during a search for clothing as authorized by the search warrant. See U.S. v. Highbarger, No. 09-1483, 2010 WL 1936262 (3d Cir. May 14, 2010) (government's discovery of child pornography on defendant's computer admissible in proceeding against defendant for violation of federal child pornography laws, when government had obtained a valid search warrant to search defendant's computer for information regarding illegal drug dealings); U.S. v. Krabsz, No. 05-787, 2006 WL 2528543 (D.N.J. August 31, 2006) (IRS agent's seizure of firearm during a valid warrant search for evidence of tax fraud admissible in proceeding against defendant for knowingly possessing a firearm as a convicted felon). Under these facts alone, the Court would not hold that counsel acted unreasonably in deciding not to file a motion to suppress.

But there is more. A motion to suppress the evidence recovered from the search warrant was made on January 5, 2004. That motion was denied by the trial court in Petitioner's first trial on the bank robbery counts. While Petitioner's counsel in the second trial did not file

---

"immediately apparent;" and 3) the officer has lawful right of access to the object. Horton v. California, 496 U.S. 128, 136-37 (1990).

15

a new motion prior to the second trial on the gun and drug counts, nonetheless, defense counsel incorporated the motion.

Lastly, Petitioner alleges that counsel failed to discover a severance motion, filed by prior counsel during his first trial for armed robbery, that only requested a bifurcation of the drug charge, but not the firearm possession charge. This, Petitioner argues, allowed him to be impermissibly tried on the gun charge in both trials, an instance of double jeopardy. This is simply an inaccurate description of the procedural history. The record shows that, in addition to granting Petitioner's motion to sever the drug charge, the trial court granted Petitioner's motion to bifurcate Count Five of his superceding indictment (the gun charge) on January 9, 2004. The record also clearly shows that during the first trial, the jury returned a verdict of not guilty only on Counts One, Two, and Three (the armed robbery charges) against Petitioner and returned no other verdicts, additional proof that Petitioner was not tried for the gun charge during the first trial. Petitioner was not subjected to double jeopardy as he claims. Accordingly, the Court finds that Petitioner received adequate assistance of counsel as guaranteed by the Sixth Amendment.

### D. Petitioner's Right to Testify

Lastly, Petitioner alleges that counsel failed to inform him of his absolute right to testify, and also denied him the right to testify at trial. A defendant's right to testify is protected by 18 U.S.C. § 3481, which states, "[i]n trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness." See also U.S. v. Leggett, 162 F.3d 237, 245 (3d Cir.

1998). However, counsel's failure to inform defendant of his right to testify, or even outright denial of his right to testify, does not result in an automatic reversal of conviction. Palmer v. Hendricks, 592 F.3d 386, 397 (3d Cir. 2010). Rather, in order to prevail on a challenge of conviction on the ground of denial of right to testify, the Strickland two-prong standard is applicable. Id. at 394. The Court need not address the first prong of the Strickland test, whether counsel actually denied Petitioner's right to testify, because Petitioner's claim fails to satisfy the second prong. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Palmer, 592 F.3d at 394 (quoting Strickland, 466 U.S. at 697).

Petitioner is required to prove prejudice in order to prevail on a denial of right to testify claim. Palmer, 592 F.3d at 399. However, the mere assertion of desire to testify is not sufficient to raise a plausible showing of prejudice. Id. at 396. In order to establish prejudice, defendant must show that he would have offered "genuinely exculpatory" testimony had he been informed of his right to testify. Id. at 396. This showing need not be onerous, but must be sufficiently detailed to be "genuinely exculpatory." Id. Factual allegations of prejudice is an essential component to a *prima facie* showing of entitlement to relief. Id. at 399.

Here, Petitioner fails to allege any facts essential to a *prima facie* showing of prejudice. Petitioner claims that his testimony with regard to the Wright encounter was crucial to his defense. However, Petitioner does not offer any details as to how his testimony would be "genuinely exculpatory." Indeed, the Court cannot discern from Petitioner's allegations how he

17

would have been able to offer testimony concerning an event at which he was neither present nor a part of. As far as this Court can tell, anything Petitioner may have to say concerning the Wright encounter would be, at best, hearsay, if not outright conjecture, neither of which are admissible at trial. Petitioner's right to testify does not allow him to ignore normal rules of evidence. Chambers v. Mississippi, 410 U.S. 284, 302 (1973); U.S. v. Gallagher, 99 F.3d 329, 332 (9th Cir. 1996); U.S. v. Bifield, 702 F.2d 342, 350 (2d Cir. 1983). Because Petitioner failed to establish a showing of prejudice, the Court finds that Petitioner is not entitled to *habeas* relief for the denial of his rights to testify.

## IV. Request for Evidentiary Hearing

To the extent that the Court finds that Petitioner lacks factual support for the claims set forth in his motion papers, Petitioner seeks an evidentiary hearing. "The District Court is required to hold an evidentiary hearing unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." U.S. v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008); see also 28 U.S.C. §2255(b). Ultimately, the decision whether to hold an evidentiary hearing rests in the district court's discretion. Id. In considering a motion to vacate a defendant's sentence, the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Id. A court may dismiss a motion brought under § 2255 without a hearing if the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)). Thus, if the record conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as

18

alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

As the Court discusses in detail *supra*, even accepting all of Petitioner's factual allegations as true, Petitioner does not allege a *prima facie* showing of violation under any of his claims for *habeas* relief. Petitioner's failure to state a valid claim rests not on the reliability, or the lack thereof, of his allegations, but upon the unavoidable conclusion that he fails to establish any sufficient basis for which relief is warranted. An evidentiary hearing, therefore, would serve no purpose in this instance. Accordingly, the Court finds that an evidentiary hearing is not necessary because the record demonstrates that Petitioner fails to establish a sufficient basis for any if his claims.

## V.    Petitioner's Motion to Modify Sentence

Finally, Petitioner moves to have his sentence reduced under 18 U.S.C. § 3582(C)(2). Petitioner based his motion primarily on Amendment 706 of the Sentencing Guidelines, which addresses the disparity of sentencing between drug offenses involving cocaine base and powder cocaine. Because Petitioner's drug offense involves cocaine base, it appears that Petitioner believes he is entitled to a reduction in sentence.

However, an examination of the sentencing proceedings finds that Amendment 706 has no application here. Petitioner was found guilty of violations under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A). That, coupled with Petitioner's prior drug conviction, carries with it a mandatory minimum of 20 years imprisonment, the exact sentence Petitioner received for his

crime.[a] See 21 U.S.C. § 841(b)(1)(A). Amendment 706 does not attempt, in any way, to modify any *statutory* sentence that Petitioner is required to serve. See U.S. v. Doe, 564 F.3d 305, 312 (3d Cir. 2009) ("Amendment 706 does not have the effect of lowering the Appellants' applicable Guideline ranges because the mandatory minimums were unaffected by Amendment 706"). Because Petitioner's sentence was statutory in nature and not a Guidelines sentence, the Court finds that 18 U.S.C. § 3582(C)(2) has no application here. Thus, Petitioner's motion is denied.

## VI. Conclusion

For the foregoing reasons, Petitioner's Motion for *Habeas Corpus* under 28 U.S.C. § 2255 is DENIED. Petitioner's Motion to Modify Sentence under 18 U.S.C. § 3582(C)(2) is also DENIED. An appropriate Order shall follow.

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: October 4, 2010

---

[a] Petitioner contends that his mandatory minimum sentence for the drug charge would have been ten years, instead of twenty, if he was not convicted of the gun charge. This is inaccurate, as record shows that in order to even bring the gun charge against Petitioner, Respondent had to present evidence that Petitioner is a convicted felon, see 18 U.S.C. § 922(g)(1), which Respondent did by admitting evidence of a 1993 drug conviction. See U.S. v. Crawford, 274 Fed.Appx. 151 (3d Cir. 2008). This 1993 conviction alone would have required a mandatory sentence of twenty years, regardless of the gun charge. See 21 U.S.C. § 841(b)(1)(A).