*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal Action No. 03-105 |
| vs. : | OPINION |
| CARL DWAYNE CRAWFORD : | |

**WOLFSON, United States District Judge:**

Presently before the Court is Carl Crawford's ("Crawford") motion for return of property pursuant to Fed. R. Crim. P. 41(g).[1] Specifically, Crawford asserts that the United States of America ("United States" or "Government") has not returned to Crawford $1430 in cash seized from Crawford during a 2003 arrest. The Government opposes Crawford's motion, inter alia, as being barred by the statute of limitations. For the following reasons, the Court concludes that (1) Crawford's motion is not barred by the statute of limitations, and (2) pursuant to United States v. Albinson, 356 F.3d 278 (3d Cir. 2004), an evidentiary hearing is required prior to ruling on the merits of his motion.

I.   Background and Procedural History

The history of this case is lengthy and protracted, but because I write for the parties who are familiar with the factual context and procedural history of this case, I recite only the facts that

---

[1] Crawford's motion is captioned as a motion pursuant to Fed. R. Civ. P. 41(e). However, it is apparent from the substance of Crawford's motions, as well as from Crawford's previous, related motions, that Crawford is moving under Fed. R. Crim. P. 41(g).

1

are relevant to my analysis. See Bentley v. Atlantic County, 382 F. App'x 205, 206 (3d Cir. 2010). On January 16, 2003, Crawford was arrested as a suspect in an armed bank robbery that occurred at a Commonwealth Bank in Philadelphia, Pennsylvania ("Commonwealth Bank"). Immediately following his arrest, Crawford was temporarily placed in the back seat of FBI Special Agent Richard Marx's vehicle, where he remained for approximately 40 minutes before being transferred to a different vehicle. In arresting Crawford, federal agents seized several items from him, including $96 in cash and a cellular phone. The following day, during the course of a legal search[2] of Petitioner's apartment, agents recovered the following evidence: 68.1 grams of cocaine base, drug paraphernalia, and a handgun with ammunition. Several months later, in June 2003, and independent of any investigation, Special Agent Marx discovered $1430 in cash wedged in the back seat of his vehicle – the same vehicle Crawford had been placed in temporarily following his arrest on January 16, 2003. According to the Government, no other criminal defendant had been placed in the backseat of Special Agent Marx's vehicle between the time Crawford was arrested and when the $1430 was discovered. The Government determined that the $1430 belonged to the Commonwealth Bank and eventually returned the money to the bank sometime in March 2004.[3] The Government did not institute any administrative forfeiture proceedings prior to remitting the money to Commonwealth Bank.

On July 20, 2003, Crawford was charged in a multicounty indictment with armed bank robbery, possession with intent to distribute cocaine base, and felony possession of a firearm.

---

[2] See generally Crawford v. United States, No. 3-cr-105, 2010 WL 3910102 (E.D.P.A. Oct. 4, 2010).

[3] The Government provides no explanation for how it determined that the money belonged to Commonwealth Bank and not Crawford.

The bank robbery charges were severed from the drug and felon in possession charges due to the potential for prejudice. Crawford was first tried on the bank robbery charges, for which he was acquitted on January 14, 2004. Crawford was then tried in a second trial in March 2004 for felony possession of a firearm and possession with intent to distribute cocaine base. Crawford was convicted by a jury of these charges, and sentenced to 63 months for the firearm conviction, and 240 months for the drug conviction. An appeal followed and the Third Circuit affirmed the conviction on November 23, 2005, but remanded for re-sentencing. Crawford subsequently appealed his amended sentence, which the Third Circuit affirmed on May 12, 2008.

Crawford filed the first of several motions relating to the return of seized property on September 7, 2004. See Dkt. No. 215. That motion, however, only requested the return of Crawford's property seized in connection with the search of Crawford's apartment conducted on January 17, 2003 the day after Crawford's arrest.[4] The motion did not refer to any cash, or other property, seized from Crawford at the time of his arrest on January 16, 2003, nor to Special Agent Marx or his vehicle, although reference was made to other Special Agents. The Court denied this motion on September 23, 2004. See Dkt. No. 216.

Crawford did not file any other motion relating to the return of seized property until April 19, 2010. See Dkt. No. 306. In this motion, Crawford sought the return of several items of seized property, including items taken from him at the time of his arrest on January 16, 2003, and the $1430 in cash later discovered in Special Agent Marx's vehicle. Crawford subsequently filed several additional motions between April 2010 and April 2011 relating to the same property, including the $1430. See Dkt. Nos. 307, 309, 317. Without a ruling on any of these

---

[4] The motion also referred to the seizure on January 16, 2003, of an Oldsmobile Aurora, but this is not relevant to the matter before the Court.

motions, in May 2012, the Government, by way of the FBI, returned to Crawford's mother, on Crawford's behalf, several items of property sought in Crawford's motions. The Government did not return the $1430 in cash. Crawford then filed the instant motion on December 17, 2012, seeking the return of the $1430 in cash.[5]

## II. Crawford's Motion for Return of Property

The sole issue before the Court on this motion is for the return of $1430 in cash that Crawford claims he placed in the back seat of Special Agent Marx's vehicle on January 16, 2003. Crawford's previous motions relating to other seized property are either mooted by the Government's return of that property in May 2011, or abandoned by the Crawford in his current motion. See Def. Reply at 1 ("[Crawford's] sole concern is the return of his $1,430 US currency."). Accordingly, the Court limits its analysis to this issue.

Crawford moves pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, which provides in relevant part:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant . . . .

In this case, because the criminal proceedings have ended, Crawford's Rule 41(g) motion is treated as a motion for equitable relief. See United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999) ("A District Court has jurisdiction to entertain a motion for return of property made after the termination of criminal proceedings against the defendant; such an action is treated as a civil proceeding for equitable relief."). "[A] district court need not necessarily conduct an

---

[5] Also pending before the Court of Appeals for the Third Circuit is a writ of mandamus filed by Crawford relating to Crawford's various motions for the return of property. See In re Carl Crawford, No. 11-2141, petition docketed, May 4, 2011.

4

evidentiary hearing on every Rule 41(g) motion. . . . Chambers, however, requires the district court to hold an evidentiary hearing on 'any disputed issue of fact necessary to the resolution of the motion,' which may include determining 'what happened' to the seized property." United States v. Albinson, 356 F.3d 278, 281-82 (3d Cir. 2004).

The Government argues, in part, that an evidentiary hearing in unnecessary because Crawford's motion for the return of the $1430 in cash is barred by the statute of limitations. Specifically, the Government contends that a six-year statute of limitations applies to motions brought pursuant to Fed. R. Civ. P. 41(g), and that this period lapsed prior to the filing of Crawford's first motion seeking the return of the $1430 in cash. In his reply, Crawford opposes the Government's calculation of the statute of limitations period, claiming that his motion was timely filed.

In United States v. Brooks, 448 F. App'x 187, 188 (3d Cir. 2011), the Third Circuit affirmed, in a per curiam decision, a district court's determination that a six year statute of limitations period applies to claims brought under Fed. R. Civ. P. 41(g), relying primarily on the Second Circuit's decision in Bertin v. United States, 478 F.3d 489, 492 (2d Cir. 2007). In Bertin, the Second Circuit explained that, "[b]ecause [n]o statute of limitations governs motions for return of property under Rule 41(g) . . . the six-year catch-all statute of limitations for civil actions against the federal government is applied to certain Rule 41(g) motions." Id. at 492-93 (citations and internal quotation marks omitted) (citing 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.")). This holding follows the holding of several other courts that have decided the issue. See United States v. Minor, 228 F.3d 352, 359 (4th Cir. 2000) ("The applicable limitations period [for return of property], six years, is set forth in 28

U.S.C. § 2401(a)."); United States v. Wright, 361 F.3d 288, 290 (5th Cir. 2004) ("The district court correctly determined that the six-year statute of limitations in 28 U.S.C. § 2401(a) applies [to Rule 41(g) motions]."); United States v. Sims, 376 F.3d 705, 708-709 (7th Cir. 2004) ("[T]he six-year statute of limitations in 28 U.S.C. § 2401(a) is appropriate . . . and so we shall borrow it for Rule 41(g) motions."); United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1210 (10th Cir. 2001) ("[W]e now join the Second, Fourth, and Seventh Circuits in holding that the bringing of Rule 41[g] motions is governed by the general statute of limitations set forth at 28 U.S.C. § 2401(a)."); United States v. Machado, 465 F.3d 1301, 1307 (11th Cir. 2006) ("Because Rule 41(g) actions filed after the close of the criminal proceedings are treated as civil actions, they are subject to the six-year statute of limitation in § 2401(a)."). Thus, I conclude that Crawford's Rule 41(g) motion is subject to a six-year statute of limitations period.

The next step in my analysis is to determine when this six-year period began to run. The Government argues that where, as here, there has been no forfeiture proceeding, the limitations period begins to run at the end of the relevant criminal proceedings. See Santiago-Lugo v. United States, 538 F.3d 23, 24 (1st Cir. 2008) ("[W]here there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding." (Internal quotation marks omitted)); United States v. Sims, 376 F.3d at 709 (same); United States v. Rodriguez-Aguirre, 264 F.3d at 1212 (same). The Third Circuit did not directly address this issue in Brooks, which appears to be the most authoritative opinion in the Third Circuit on calculating the statute of limitations for Rule 41(g) motions. The Brooks court did not explain what constitutes the end of criminal proceedings; the decision did, however, cite several cases from other circuits that have more thoroughly analyzed the issue, namely, Bertin v. United States, 478 F.3d at 492, United States v. Wright, 361 F.3d at 290; and

United States v. Duke, 229 F.3d 627, 630 (7th Cir. 2000). Most informative of these cases is Bertin,[6] in which the Second Circuit held that where "there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property." Bertin v. United States, 478 F.3d at 493. In that connection, the Second Circuit found, without further explanation, that the defendant's Rule 41(g) motion accrued on the day that he was sentenced and judgment was entered. Id. at 494. Based on the Third Circuit's reliance on Bertin, and the fact that none of the other cases cited in Brooks hold to the contrary, I conclude that, for purposes of the statute of limitations for Rule 41(g), the end of criminal proceedings is, at the very earliest, the date that judgment is entered against a defendant.

This conclusion, however, does not end the analysis, as the parties dispute the relevant date of judgment. The Government contends that the statute of limitations period for Crawford's Rule 41(g) motion began when Crawford was acquitted on January 14, 2004, following his armed robbery trial. In support of its position, the Government argues that it introduced the $1430 into evidence in its case against Crawford at his bank robbery trial and did not rely on the $1430 in prosecuting Crawford for possession with intent to distribute cocaine base. See Gov't Opp. at Ex. B (Bank Robbery Trial Transcript Excerpt); Gov't Response to Court Letter dated March 5, 2013. The Government, in response to this Court's request, reviewed the record and confirmed that "there is no testimony or other evidence of record at the

---

[6] Both Duke and Wright concerned the defendant's claimed lack of notice of an administrative forfeiture proceeding in calculating the statute of limitations, and thus are not instructive on how to determine the time period when there has been no forfeiture proceedings, as in Crawford's case.

March 2004 [cocaine trial] relating to the currency." Gov't Response to Court Letter dated March 5, 2013, at 1. Significantly, however, the Government also did not provide any affidavit, certification, or other records showing when the money was actually returned to Commonwealth Bank. Crawford contends that the relevant criminal proceeding is not the bank robbery trial, but rather the subsequent possession with intent to distribute cocaine base trial. Crawford argues that the severance of his charges for trial purposes is irrelevant for purposes of determining the statute of limitations period because the seizure of his property occurred out of a single arrest. According to Crawford, that proceeding ended either on May 23, 2006, when the Third Circuit affirmed Crawford's conviction, or on October 4, 2010, when this Court denied Crawford's habeas petition.

Neither party has provided any support for his or its position regarding how severance affects the statute of limitations period in a Rule 41(g) motion, and this Court has been unable to find any. Nevertheless, I am guided by the First Circuit's reasoning in Santiago-Lugo, explaining that "the rationale for the accrual date occurring when the criminal proceedings have concluded is that 'once the criminal proceedings . . . have concluded without the property having been forfeited . . . , the claimant knows that he has a present right to its return.'" 538 F.3d at 25. In this case, while Crawford knew in January 2004 that the Government had used the seized currency in connection with the armed robbery charges, it is unclear from the record whether Crawford was aware that the Government would or would not use the currency at any point during the subsequent trial, judgment, and sentencing on the drug and weapons charges.[7] And, although the Government has represented to the Court that it used the currency only in the armed

---

[7] Indeed, I note that the Crawford was charged in a single indictment, with the trials apparently severed for prejudice purposes only.

robbery trial – and, in fact, returned the currency to Commonwealth Bank in March 2004 – the Government has provided no affidavit, certification, or other evidence to support this claim. Thus, I cannot be certain that the Government actually did return the currency or that it did not use it in any way in connection with Crawford's drug and weapons trial and sentencing The Third Circuit has held that, in opposing a Rule 41(g) motion, "[t]he [G]overnment must do more than state, without documentary support, that it no longer possesses the property at issue." United States v. Albinson, 356 F.3d at 283-84 (internal quotation marks omitted); id. at 283 ("Allowing the Government to defeat a Rule 41(g) motion simply by asserting that it no longer retains possession of the property would frustrate the purpose of the Fed. R. Civ. P. 41(g) evidentiary inquiry as set forth in Chambers[, 192 F.3d 374 (3d Cir. 1999)].").[8] Moreover, is unclear why the Government would use the currency as evidence against Crawford during his armed robbery trial and then – following his acquittal – return the currency to Commonwealth Bank instead of returning it to Crawford or instituting a forfeiture proceeding. In sum, based on the Third Circuit's holding in Albinson and the scant record before me, I cannot reasonably conclude that Crawford's right to the return of the seized currency arose at the close of the January 2004 trial because it is uncertain whether Crawford was made fully aware at that point that the Government no longer relied on the seized currency in any form. See Santiago-Lugo

---

[8] I recognize that the Government primarily relies on its claim that it no longer possesses Crawford's property to bolster its argument that Crawford's Rule 41(g) motion is untimely, not to show that it is meritless. However, I do not view this distinction as significant under Albinson. In this case, like in Albinson, the Government is trying to defeat a Rule 41(g) motion based on an unsubstantiated claim that it no longer possesses the property in question. Thus, the same procedural concerns that the Third Circuit identified in Albinson and Chambers are implicated here, regardless of the fact that the Government is arguing that Crawford's motion is untimely instead of arguing that there can be no proper relief. See, e.g., United States v. Albinson, 356 F.3d at 283 ("[T]he prospect of a hearing provides an incentive for the government to retain accurate records of seized property, consistent with its regulatory obligations.").

538 F.3d at 25; cf. United States v. Minor, 228 F.3d at 359 ("The cause of action [for return of seized property] can accrue no earlier than the date that forfeiture actually occurred, because until that date the owner has not actually incurred the specific injury alleged-deprivation of property without constitutionally adequate notice.").

Thus, in following the reasoning set forth by the Second Circuit in Bertin, I determine that the statute of limitations for the return of Crawford's currency began to run when judgment was entered against Crawford on the drug and weapons charges on November 5, 2004. See Dkt. No. 238. Crawford's first motion for return of the currency was filed on April 19, 2010, within the six-year statute of limitations period. Crawford's motion is therefore timely.

As already noted, the Government's disposition of Crawford's property is in dispute. Additionally, the Government argues that Crawford has not shown title to the currency, and that even if Crawford can show title, he abandoned the currency when he placed it in the back seat of Special Agent Marx's vehicle. Lastly, the Government argues that because Crawford took the position during his armed robbery trial of disclaiming ownership of the currency, he should not be allowed to reverse his position now. Crawford rejects these arguments, which, as the Government notes, turn on factual determinations. Thus, in order to determine whether the Government may ultimately prevail on carrying its heavy burden on these arguments, the Court must hold an evidentiary hearing to resolve these disputed facts. Fed. R. Civ. P. 41(g); United States v. Albinson, 356 F.3d at 282 (quoting United States v. Chambers, 192 F.3d at 378). Accordingly, Crawford's request for an evidentiary hearing is granted.

### III. Conclusion

For the foregoing reasons, the Court determines that it is necessary to hold an evidentiary hearing on Crawford's Motion for Return Property Illegally Seized Pursuant to F.R.C.P. 41(g).

An appropriate Order shall follow.

Date: April 8, 2013                                          s/ Freda L. Wolfson
                                                             The Honorable Freda L. Wolfson
                                                             United States District Judge